24 So.2d 909

## ALLEN v. INVESTORS SYNDICATE et al.
### 3 Div. 436.

Supreme Court of Alabama.
Jan. 24, 1946.

Solomon & Berkowitz and Harvey Deramus, all of Birmingham, for appellants.

Meader, Jones & Murray, of Montgomery, Bainbridge & Mims and Chas. W. Greer, all of Birmingham, Steiner, Crum & Weil, of Montgomery, and Wm. N. McQueen, Atty. Gen., for appellees.

388

BROWN, Justice.

The original bill was filed by Ethel Cohn Green, Doris Fox, as administratrix of the estate of Ruben Fox, deceased, Robert Berman, Nathan Allen and Sol Rittenbaum, against Investors Syndicate, a Minnesota corporation organized in 1894, Investors Syndicate of America, Inc., a Minnesota corporation organized in 1941, the Investors Mutual, Inc., a Nevada corporation formed in 1941, and the First National Bank of Montgomery, organized and existing under the National Banking Act. All of said corporations, as alleged in the bill, have qualified to do business in Alabama.

The bill seeks to enjoin the "Syndicate", the "Mutual" and the "America" from selling or offering for sale any of their securities in the State of Alabama. To enjoin said corporations from paying cash surrenders and loans to certificate holders and to segregate and impound all income payments from certificate holders to enjoin the respondents from paying any dividends upon capital stock. To restrain respondents from making or causing to be made to any holder of certificates issued by the respondent Syndicate from exchanging certificates and securities issued by the "Mutual" and "America". To compel the Syndicate to deposit with the bank in securities an amount equalling an additional ten percent of its face liabilities to certificate holders resident in Alabama. To restrain and enjoin the respondents from removing out of the State of Alabama any of their assets, records, books or papers; for appointment of a temporary receiver to take over the trust property now in the hands of The First National Bank of Montgomery, said trust property consisting of solvent liquid securities of approximately $5,500,000 value, equalling one hundred percent of Syndicate's face liability to certificate holders in Alabama; and for other and general and special relief.

Before the decree appealed from was entered, Ethel Cohn Green and Sol Rittenbaum were stricken as complainants by amendment to the bill, and "William N. McQueen, as Attorney General and as Acting State Securities Commissioner" of the State of Alabama, was added as a party defendant.

The defendants separately filed demurrers to the bill and to the bill as last amended, the court sustained the demurrers, and from that decree Nathan Allen has appealed, and has made on the record seventy-three assignments of error, which, in argument and brief, appellant treats in bulk.

To state the substance of the allegations of the bill, Investors Syndicate up until the organization of America and Mutual had engaged in the business, for fifty years or more, of issuing "investment certificates" to its clientele upon each making a cash payment and agreeing to pay installments of like amounts in advance for fourteen years, aggregating fifteen payments, to pay the sum stated in the face of the certificate upon its surrender, which included the principal paid and its earnings, amounting to $5\frac{1}{2}$ percent or more. To illustrate, a certificate issued on the 23d of March, 1937, upon the payment by the certificate holder of $600 and agreement to pay a like sum for fourteen years, annually in advance, Investors Syndicate pledged itself to pay such holder the sum of $12,500. The certificate contract carried nonforfeiture stipulations to the general effect that in case of default in the payments when due, continuing through less than two years, the contract could be rein-

stated without decreased value during the default period, and the maturity date would be extended for the time of the lapse in payments. If payments are discontinued for two years or more, the certificate holder is to receive a sum payable under optional settlements provided for in the certificate. Provision for optional settlements in the event of death or disability; for loans on contract; optional settlements prior to maturity if certificate contract has been in force for "one or more completed contract years"; and the right to election at any time after a contract has been in force for seven contract years to convert the contract into "annuity certain". The appellant Nathan Allen owned one of said certificates of the face value of $1,000.

America and Mutual are affiliated corporate persons owned and controlled by Syndicate, and since their organization certificates of like character are being issued through America. During the existence of Investors Syndicate it has engaged in business in several states of the United States, and by the National and Securities Exchange Act of Congress embodied in Chapter 2D, Title 15, § 80a—1, U.S.C.A., is declared to be "affected with a national public interest."

Through the years Syndicate had accumulated "aggregate assets of approximately $175,000,000.00" at the time the bill was filed, and at that time its total liabilities were approximately $171,000,000. America, at about the time the bill was filed, had principal assets of approximately $12,000,000.

Allen, a resident of the State of Alabama, purchased his certificate after Syndicate had qualified to do business in Alabama, and as a condition precedent to its engaging in business, the State Securities Commissioner of Alabama, for the protection of Alabama investors, required Syndicate to deposit in the First National Bank of Montgomery, Alabama, $5,500,000 in securities consisting primarily of F.H.A. real estate mortgages and other solvent securities, and the solvency of said securities and their value is not questioned in this bill. Nor is the bank, as trustee, charged with any violation of its duties in keeping and maintaining said fund, the securities so deposited being equal to one hunderd percent of Syndicate's face liability to Alabama investors.

There is an absence of averment in the bill that either of said respondents are in-

solvent or that Syndicate has breached any agreement, been guilty of any default, or violated any duty arising out of its obligation to the complainant. The burden of the bill's allegations is that Syndicate through the years has adopted a course of dealing with its clientele that its profits arising from gains through forfeitures by delinquent investors is essential to uphold and sustain the business; and its investments in interest bearing securities are wholly insufficient to meet its liabilities and overhead expenses; and, while it is not now insolvent, it is virtually operating a lottery, and inevitably faces insolvency. Hence, its assets held by the bank should be taken over and administered for the benefit of certificate holders resident in Alabama. That under the provisions of the National Securities Act referred to in the bill as "The Investment Company Act of 1940", it "appeared that it would be unlawful for the Syndicate to effect exchanges or offers for exchanges of the securities of America and Mutual, either or both, for Syndicate outstanding certificates without causing the same to be first submitted to and approved by the Securities and Exchange Commission", and despite the provisions of the statute, Syndicate, its officers, agents and employees have devised plans or schemes to effect such offer and exchange in evasion or violation of the federal statute, the bill setting forth the course of dealings in which it is engaging in making said exchanges. The bill avers:

"That, as a result of the practices hereinabove referred to, and because of violations of the Investment Company Act of 1940, a proceeding has been filed in the District Court of the United States for the District of Minnesota, Fourth Division, Minneapolis, wherein the Securities and Exchange Commission is plaintiff, and the Syndicate. America, Mutual and their officers and directors are respondents and that, in said proceeding, the plaintiff demands, among other things, a permanent injunction against the violations of law hereinabove referred to, the removal of the officers and the appointment of a receiver for the defendant Syndicate.

"Complainants further aver that they are informed and believe that a hearing upon the merits of said proceeding filed in Minneapolis has been set down to be heard before the Federal District Judge in, towit, the month of October, 1943. It appears that, pursuant to the provisions of Section 80A–41–e, Title 16 [15], U.S.C.A. the Court at

390

Minneapolis, as a court of equity, may 'to the extent it deems necessary or appropriate, take exclusive jurisdiction and possession of the—company involved and the books, records and assets thereof, wherever located; and the court shall have jurisdiction to appoint a trustee, who with the approval of the court, shall have the power to dispose of any or all of such assets, subject to such terms and conditions as the court may prescribe.' As hereinbelow shown, the complainants aver that, if such a trustee or receiver is appointed by the said court at Minneapolis, an 'event of default' will happen under the terms of the trust agreement made a part hereof. * * *."

■ The appellant Allen is not a party to the trust agreement between Syndicate and the bank. In case of default by Syndicate in respect to its liability and obligation to him, he would become one of the cestui que trustents. His relation to Syndicate is that of a secured creditor to the full extent of its liability under the certificate which he holds, and in the absence of allegations showing that the integrity of the trust is threatened through maladministration, fraud, or breach of contract obligations or duties, to resident certificate holders, he is not in a position to invoke the aid of a court of equity to seize and administer the trust.

■ The acting State Securities Commissioner has no pecuniary interest in the trust property, and in the absence of a breach of the trust, or a violation of the rights of creditor certificate holders, no duty rests upon him to take over and administer the trust. He is neither a necessary nor a proper party to the bill. His duties are purely statutory. In requiring the trust to be set up, he acted as an agency under statutory power. Ex parte Goodwyn, 227 Ala. 173, 149, So. 216. The bill alleges that the bank is guilty of no wrong or defalcation, and the other respondents have breached no obligation arising out of the contract between Syndicate and appellant Allen. We are, therefore, of opinion that the bill is without equity, in that it fails to state any equitable ground for relief due complainant. The bill shows that the United States District Court for the District of Minnesota, the home state of Syndicate, has assumed jurisdiction to correct the alleged violation of the Federal Securities Act set up in this bill.

■ " * * * 'It is a familiar principle that when a court of competent jurisdiction has become possessed of a case its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and no court of coordinate authority, is at liberty to interfere with its action. The principle is essential to the proper and orderly administration of the laws; and, while its observation might be required on the grounds of judicial comity and courtesy, it does not rest upon such consideration exclusively, but is enforced to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process. * * *'" State v. Black, 239 Ala. 644, 647, 196 So. 713, 715. See also Moss v. Ingram, 246 Ala. 214, 20 So.2d 202.

■ It is also well settled that proceedings in equity for the appointment of a receiver must be instituted by party with interest to be effected and must be threatened with an injury sought to be averted. Ex parte Goodwyn, 227 Ala. 173, 149 So. 216. See also Fidelity & Deposit Co. of Maryland v. Goodwyn, 231 Ala. 44, 163 So. 341.

We are of opinion, therefore, that the bill is without equity and the decree appealed from is due to be affirmed. City of Birmingham et al. v. Bollas, 209 Ala. 512, 96 So. 591; McDonald v. Mobile Life Ins. Co., 56 Ala. 468.

■ Appellees have made cross assignment of errors and insist that the bill is without equity and the court should have gone further and dismissed it. There is nothing in the allegations of the bill that suggests that an amendment could be made which would give it equity, nor is there shown to be any justiciable controversy between Allen and the other parties or any of them that would justify him in seeking a declaratory decree. We are, therefore, of opinion that the cross assignments of error are well taken, and that the bill should be dismissed. It is so ordered by the court. McCraw v. Davenport, 238 Ala. 245, 189 So. 884.

Affirmed. Bill dismissed.

GARDNER, C. J., and LIVINGSTON and SIMPSON, JJ., concur.